**MATTHEW RIGHETTI**      (SBN #121012)
matt@righettilaw.com
**JOHN GLUGOSKI**      (SBN #191551)
jglugoski@righettilaw.com
**RIGHETTI GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA  94104
Telephone:  (415) 983-0900
Facsimile:   (415) 397-9005

**Attorneys for PLAINITIFF**

# UNITED STATES DISTRICT COURT

# NORTHERN OF CALIFORNIA

| | |
|---|---|
| CATHY BIRDSONG, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>AT&T CORP., AT&T SERVICES, INC. (formerly SBC Services, Inc.) AT&T MANAGEMENT SERVICES, LP, AT&T OPERATIONS, INC., YELLOWPAGES.COM, AT&T MOBILITY SERVICES, LLC (formerly doing business as  Cingular Wireless, LLC) and DOES 1- 25, inclusive,<br><br>       Defendants. | CASE NO. 4:12-cv-06175-TEH<br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Alameda Superior Court Case No. RG12654472]<br><br>Date:  February 25, 2013<br>Time:  10:00 a.m.<br><br>**Judge Thelton E. Henderson**<br><br>Court Room:  12 |

## TABLE OF AUTHORITIES

**Federal Cases**                                                                                               **Page(s)**

*Ashcroft v. Iqbal*
(2009) 129 S. Ct. 1937……………………………....……………………………….4

*Baas v. Dollar Tree Stores, Inc.*
(N.D. Cal. 2007) No. C 07-03108 JSW, 2007 U.S. Dist. LEXIS 65979…...………...2, 8

*Barrentine v. Arkansas-Best Freight System, Inc.*
(1981) 450 US 728……………………………….…………………………………..12

*Brooklyn Savings Bank v. O'Neil*
(1945) 324 U.S. 697……………………………………………………………....11

*California Dep't of Toxic Substances Control v. Alco Pac., Inc.*
(C.D. Cal. 2002) 217 F. Supp. 2d 1028……………………………………………. 8

*Chamber of Commerce of the United States v. Whitting*
(2011) 131 S.Ct. 1968……………………………………………………………..22

*Coto Settlement v. Eisenberg*
(9th Cir. 2010) 593 F3d 1031………………………………………………..………1

*EEOC v. Waffle House*
(2002) 534 U.S. 279……………………………………………………...18, 19, 21

*Haley v. City of Boston*
(1st Cir. 2011) 657 F3d 39……………………………………………………………1

*Hibbs-Rines v. Seagate Technologies, LLC.*
(N.D. Cal. 2009) No. C 08-05430 SI, 2009 U.S. Dist. LEXIS 19283…………..………2

*In Re Wal-Mart Stores, Inc. Wage & Hour Litigation*
(N.D. Cal. 2007) 505 F. Supp. 2d 609……………………………………….......2, 5, 8

*J.I. Case Co. v. NLRB,*
(1944) 321 U.S. 332 ……………………………………………………………....13

*Kaiser Steel Corp. v. Mullins*
(1982) 455 U.S. 72…………………………………………………………………14

*Kazemi v. Payless Shoesource, Inc.*
  (N.D. Cal. 2010) No. C 09-5142 MHP, 2010 U.S. Dist. LEXIS 27666…..…..............3, 8

*Lazar v. Trans Union LLC.*
(C.D. Cal. 2000) 195 F.R.D. 665……………………………………………..……3

*Lynn's Food Stores, Inc. v. United States, etc.*
(1982) 679 F.2d 1350…………………………………………………………..12

*NLRB v. City Disposal Systems, Inc.*
(1984) 465 U.S. 822……………………………………………………….....14

*N.L.R.B. v. Hoover Design Corporation*
(C.A. 6, 1968) 402 F.2d 987……………………………………………….....14

*N.L.R.B. v. Walls Manufacturing Company*
(C.A.D.C., 1963) 321 F.2d 753…………………………………...……14

*N.L.R.B. v. Washington Aluminum Company, Incorporated*
(1962) 370 U.S. 9……………………………………………………………14

*Pillsbury, Madison & Sutro v. Lerner*
(9th Cir. 1994) 31 F.3d 924………………………………………………...3

*Rosales v. Citibank, Fed. Sav. Bank*
(N.D. Cal 2001) 133 F. Supp. 2d 1177………………………………………8-9

*Sanders v. Apple, Inc.*
(N.D. Cal. 2009) 672 F. Supp. 2d 978……………………………...….2

*Salt River Valley Water Users Ass'n,*
(1952) 99 NLRB 849………………………………………….……………14

*Spandsco Oil & Royalty Co.*
(1942) 42 NLRB 942…………………………………………...……………14

*Schulte Co. v. Gangi*
(1945) 328 U.S. 108……………………………………...…………………12

*SEC v. Sands*
(C.D. Cal. 1995) 902 F. Supp. 1149………………………..………………3

*Thompson v. Merck & Co., Inc.*
(E.D. Pa. 2004) *No. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 02-4176,*
*2004 U.S. Dist. LEXIS 540*……………………………………………………………9

*Wyeth v. Levine*
(2009) 555 U.S. 555……………………………………………………………22

**_State Cases_**

*Arias v. Super. Ct.*
(2009) 46 Cal.4th 969………………………………………………..………21

*Armendariz's v. Foundation Health Psychcare Services, Inc.*
(2000) 24 Cal. App. 4th 83………………………………….…………20

*Brown v. Ralphs Grocery Co.*
(2011) 197 Cal.App.4th 489……………………………..……………16, 17, 18

*Chindarah v. Pick Up Stix, Inc.*
(2009)171 Cal.App.4th 796………………………………………10

*Dunlap v. Superior Court,*
(2006) 142 Cal.App.4th 330……………………………………………19

*Franco v. Athens Disposal Co., Inc.*
(2009) 171 Cal.App.4th 1277………………………………..…………16, 17

*Gentry v. Superior Court*
(2010) 42 Cal.App.4th 443……………………………………………17, 20

*Gould v. Maryland Sound Industries, Inc.*
(1995) 31 Cal.App.4th 1137…………………………………………10

*Home Depot U.S.A., Inc. v. Super. Ct.*
(2010) 191 Cal.App.4th 210……………………………………………21

*In re Trombley*
(1948) 31 Cal.2d 801………………………………..…………………10

*Kashani v. Tsann Kuen China Enterprise Co.*
(2004) 118 Cal.App.4th 531………………………………………………14

*Kerr's Catering Service v. Dept. of Industrial Relations*
(1962) 57 Cal.2d 319………………………………..…………………10

*Little v. Auto Stiegler, Inc.*
(2003) 29 Cal.4th 1064……………………………………………...…………..21

*Pressler v. Donald L. Bren Co.*
(1982) 32 Cal.3d 831……………………………………………………………10

*Reyes v. Macy's, Inc.*
(2011) 202 Cal.App.4th 1119…………………………………………………16

*Sierra etc. Park Co. v. Universal Elec. etc. Co.*
(1925) 197 Cal. 376……………………………………………………………10

*Sullivan v. Oracle Corp.*
(2011) 51 Cal.4th 1191………………………………………..………………21

**Rules and Statutes**

5 James Wm. Moore et al., Moore's Federal Practice §23.85[1] (3d ed. 2010)………..9

7AA Charles Alan Wright et al., *Federal Practice and Procedure Civil* §1785.3
(3d ed. 2005)…………………………………………………………………….8

California Labor Code Section 2699.3(b)(C)(4)…………………………….....11, 15

*Federal Rule of Civil Procedure 12(b)(6)*……………………………………….2

FED. R. CIV. P. 8(a)(2)……………………………………………………….4

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..............................................................................................*ii*

I.      INTRODUCTION.............................................................................................1

II.     STANDARDS OF REVIEW...............................................................................2

III.    ARGUMENT......................................................................................................3

        A.      Heightened Fact Pleading Is Not Required Under Twombly.......................3

        B.      Plaintiff's FAC Alleges Sufficient Facts for Each of the Claims
                to Show That She And The Class Are Entitled to Relief............................4

        C.      Plaintiff Has Properly Identified The Class Of Individuals
                And Pled Sufficient Facts.....................................................................7

        D.      Striking of Class Allegations at this Stage – Prior to Discovery –
                Constitutes Prejudicial And Reversible Error...........................................8

        E.      Bona Fide Dispute Required In Order For Agreements to
                Be Enforceable..................................................................................9

        F.      AT&T's Request To Strike Class Allegations Improperly
                Relies On Extrinsic Evidence Which Fails To Meet Requirements
                For Admissibility..............................................................................11

        G.      AT&T Correctly Concedes That FLSA Claim Cannot Be Waived...............12

        H.      NLRB Confirms A Contract That Eliminates The Ability to
                Vindicate Statutory Rights Is Illegal And Unenforceable...........................13

        I.      Plaintiffs Have A Legal Right To Amend To Add Private
                Attorney General Claims ("PAGA") That Must Proceed As
                Collective/Representative Action.........................................................15

                1.      Reyes Confirms That PAGA Can Only Proceed As
                        A Representative Action And Thus A Statutory Right
                        Will Be Eliminated By Enforcing A Class Action Ban....................16

                2.      Preemption Does Not Apply To Representative Private
                        Attorney General Actions......................................................17

                3.      Private Agreements Cannot Be Used To Eviscerate
                        Statutory Rights That Cannot Be Waived..................................20

                4.      The State of California Was Not A Party In The Agreement
                        And Cannot Be Forced To Waive Its Enforcement Rights..............21

                5.      There Is A Strong Presumption Against Implied
                        Preemption Of A State's Exercise of Its Police Powers.................21

IV.     CONCLUSION.................................................................................................22

## **INTRODUCTION**

AT&T's Motion to Strike raises *Iqbal* and *Twombly* arguments, which District Courts routinely see; but, after 15 pages of argument about "*uncertainty*" as to the basis for the claims alleged, Defendant confirms that in fact 1) Plaintiff has a viable FLSA overtime misclassification claim; and 2) all of her remaining alleged claims for meal and rest breaks, waiting time penalties and related relief are barred by a severance agreement entered into between the parties. As evidenced from pages 15-25 of the moving papers, both parties are in agreement that AT&T's *Iqbal* and *Twombly* motion has no merit.  Assuming, this Court was inclined to entertain Defendants **diametrically** opposed arguments **separately**, Plaintiff addresses AT&T's *Iqbal* and *Twombly* arguments in more detail at sections II-III.E of this brief.

In reality, AT&T's goal is to have this Court convert this motion to a hearing on class certification and deny certification outright by dismissing the class action allegations. AT&T bases its entire argument on the grounds that Plaintiff entered into a severance agreement and that terms of the severance agreement prevent this case from proceeding forward on a classwide basis.  AT&T's argument is flawed in numerous respects both procedurally and substantively.

It is a well-established rule of law that it is improper to introduce -- and for the Court to consider -- extrinsic evidence on a 12(b)(6) motion to strike.  AT&T cannot base a motion to strike the complaint on affidavits or declarations containing extrinsic evidence showing that the allegations are "false" or "sham."  The court can only "augment" the facts and inferences from the body of the complaint with "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." [*Haley v. City of Boston* (1st Cir. 2011) 657 F3d 39, 46; *Coto Settlement v. Eisenberg* (9th Cir. 2010) 593 F3d 1031, 1038]. A self-serving declaration from AT&T's head of human resources, which purports to authenticate a severance agreement entered into by Plaintiff does not meet the "augment" standard. Accordingly, the court may not consider the declaration and exhibits attached thereto and thus the motion must be denied.

1

If for the sake of argument, the Court could consider this extrinsic evidence AT&T's argument is in direct conflict with the National Labor Relations Board, which holds such waivers are unenforceable.

Furthermore, Plaintiff has a statutory right to have her case proceed as a representative action. Plaintiff has exhausted her administrative rights to pursue a claim for penalties under California's Private Attorney General Act (PAGA). True and correct copies of the PAGA exhaustion letters are attached to the Declaration of John Glugoski as Ex. 1. Plaintiff has a statutory right to amend the Complaint to add PAGA claims, which can only be brought on a representative basis. Any attempt by AT&T to prevent Plaintiff from amending to add PAGA and proceed with her representative action would be contrary to law.

## II.   STANDARDS OF REVIEW

"Under *Federal Rule of Civil Procedure 12(b)(6)*, a motion to dismiss should be granted if the plaintiff is unable to delineate 'enough facts to state a claim to relief that is plausible on its face.'"*In Re Wal-Mart Stores, Inc. Wage & Hour Litigation*, 505 F. Supp. 2d 609, 613 (N.D. Cal. 2007) (citing *Twombly*, 550 U.S. 544). To survive a motion to dismiss at the pleadings stage, Plaintiff need only proffer enough facts to state a claim to relief that is **plausible** on its face. *Twombly*, 550 U.S. at 570; *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 984-985 (N.D. Cal. 2009). Furthermore, under *Twombly*, Plaintiff's **factual allegations must be taken as true** for purposes of alleging plausible claims. *Twombly*, 550 U.S. at 555.

Further, case law allows for discovery before ruling on the propriety of class allegations. *See Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW, 2007 U.S. Dist. LEXIS 65979, *8 (N.D. Cal. 2007) (citing *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 2007 U.S. Dist. LEXIS 41679, 2007 WL 1557935, * 4 (N.D. Cal. 2007)); *see also Hibbs-Rines v. Seagate Technologies, LLC*, No. C 08-05430 SI, 2009 U.S. Dist. LEXIS 19283, at *7-8 (N.D. Cal. March 2, 2009) ("Plaintiff should at least be permitted to conduct some discovery before the Court rules on the propriety of the class allegations."). As noted by the

court in *Kazemi v. Payless Shoesource, Inc.*, No. C 09-5142 MHP, 2010 U.S. Dist. LEXIS 27666, at *5 (N.D. Cal. March 16, 2010), in denying a motion to dismiss or to strike, "motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for making arguments pertaining to the class allegations."

In order to grant a motion to strike, the defect "must appear on the face of the pleading under attack." *SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). "[M]otions to strike are 'regarded with disfavor because [they] are often used as delaying tactics, and because of the limited importance of pleadings in federal practice," *Id.* at 1165-66; *see also Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000) ("Motions to strike are generally viewed with disfavor and are not frequently granted."). Finally, in ruling upon a motion to dismiss or to strike, the Court must view the pleading under attack in the light most favorable to the pleader. *See id.* at 669; *see also Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994) ("Allegations of material fact in the complaint are taken as true and are construed in the light most favorable to [Plaintiff].").  See also section III. F below which confirms that reliance on extrinsic evidence in support of motions to strike that does not meet the standard for "judicial notice" is improper.

Based on such standards, and for the reasons stated herein, the facts alleged within Plaintiff's FAC provide sufficient allegations for Plaintiff to prove a plausible claim. As such, AT&T's current motion should be denied in its entirety.

## III.                        <u>ARGUMENT</u>

### A.     **Heightened Fact Pleading Is Not Required Under *Twombly***

AT&T attempts to persuade this Court to improperly apply what is tantamount to a heightened pleading standards of Federal Rule of Civil Procedure 9 to Plaintiff's FAC must be rejected. It is beyond cavil that Rule 8's general rules of pleading are applicable to the claims in this case.  Rule 8 requires only "a short and plain statement of the claim showing

that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).   Indeed, as explained by the *Twombly* Court:

> In reaching [our] conclusion, we do not apply any "heightened" pleading standard, nor do we seek to broaden the scope of *Federal Rule of Civil Procedure 9*, which can only be accomplished "'by the process of amending the Federal Rules, and not by judicial interpretation.'"   (citation) . . . . Here, **our concern is not that the allegations in the complaint were insufficiently "particular[ized]**," *ibid.*; rather, the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.

*Twombly*, 550 U.S. at 569 n.14 (emphasis added) (finding that antitrust conspiracy was not suggested by the facts adduced under either theory of the operative complaint).

There is nothing in *Twombly*, or in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009), another case cited extensively by Defendants, to suggest that the level of detail Defendants seek (Mem., pp. 8) is required. To the contrary, Plaintiff has satisfied Rule 8 and *Twombly* by alleging sufficient facts to render Plaintiff's entitlement to relief plausible. *See Twomby* at 570.

**B.   Plaintiff's FAC Alleges Sufficient Facts for Each of the Claims to Show That She And The Class Are Entitled to Relief.**

AT&T bases their motion primarily on their assertion that Plaintiff's pleadings do not satisfy the pleading requirements set forth in *Twombly* of alleging "sufficient facts to raise a right to relief above the speculative level." Mem., p. 6, lines 2-4. (emphasis omitted) (citing *Twombly*, 550 U.S. at 555-556). *Twombly* stands for a requirement of plausibility *in toto* – not detailed factual allegations of the sort Defendants attempt to demand. *See Twombly*, 550 U.S. at 555 (a complaint does not need "detailed factual allegations" but must "give the defendant fair notice" of what the claim is . . . and the grounds upon which it rests"). AT&T's confirmation that Plaintiff has a viable FLSA claim (Memo p. 15) undermines its argument that Plaintiff has failed to meet the pleading standard.

1

2      The FAC alleges sufficient facts and common policies and practices to satisfy the

3   pleading requirements. These facts are to be taken as true as alleged, and as Plaintiff's claims

4   are wage and hour claims for wages owed and for penalties under the California Labor

5   Code—the claims as alleged and as taken to be true show a plausible basis for recovery and

6   for Plaintiff to proceed on. *See In Re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d at 613 (citing

    *Twombly*, 550 U.S. 544).

7      These AT&T-driven policies have been carried out by AT&T to deprive Plaintiffs

8   and the class all wages owed.

9      As explained in the FAC at the paragraphs noted,

10

11  • This proposed class and collective action arises out of DEFENDANTS'
    misclassification as exempt of certain California employees of DEFENDANTS in its
12    INFORMATION TECHNOLOGY Business Unit. These employees primarily
    performed nonexempt functions for the DEFENDANTS, were misclassified as
13    "exempt" and as a consequence are owed compensation and other benefits earned
    during the Class Period, which is defined as four years prior to the date of the filing of
14    the complaint, through the date of trial. (FAC para. 1)

15  • Prior to February 2012, DEFENDANTS misclassified PLAINTIFF and the class
16    as exempt. On or about February 2012, PLAINTIFF and the class were all
    reclassified from exempt to non-exempt status, yet were not compensated for all
17    relevant times when they were classified exempt. DEFENDANTS' decision to
    reclassify all of these employees at around the same time did not correspond
18    with any change in their job duties. PLAINTIFF's and the class' job duties
    consisted primarily of work that did not trigger exempt status under federal or
19    California law. PLAINTIFF performed all obligations and expectations as
20    required during her employment. (FAC para 6);

21  • PLAINTIFF and class members were routinely required to work in excess of
22    eight (8) hours a day and/or forty (40) hours per week. PLAINTIFF and class
23    members have not been paid for all hours worked during the period when they
    were misclassified as exempt. (FAC para 7)

24

25  • PLAINTIFF brings this action on her own behalf and on behalf of all other such
    current and former employees similarly situated, as well as on behalf of the
26    public. (FAC para 8)

27  • Pursuant to DEFENDANTS' uniform employment policies, class members,
28    including PLAINTIFF, were misclassified as "exempt" and paid a salary

5

regardless of the amount of hours worked. During the class period these employees, including PLANITIFF, typically worked well over 8 hours/day and over 40 hours/week. (FAC para 9)

- DEFENDANTS have not paid wages to the class, including PLAINTIFF, for all hours worked during the time they were misclassified as exempt, despite DEFENDANTS' recognition of their misclassification through the simultaneous reclassification of these employees as non-exempt, but with no change in their job duties. (FAC para 10)

- Throughout the class period, class members, including PLAINTIFF, were not provided meal periods and were not authorized and permitted to take rest breaks pursuant to the requirements of California law. (FAC para. 11)

- The duties of all of the class members are set forth by uniform written companywide policies and procedures. Federal law states that an employee must be paid overtime equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 per week or 8 per day. Members of the class are not exempt and DEFENDANTS cannot meet their burden of showing the applicability of any exemption under California or federal law. (FAC para 12)

- PLAINTIFF brings this action on behalf of herself and all others similarly situated as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3). PLAINTIFF also brings this action as a collective action on behalf of all those similarly situated pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (The "FLSA"). The class that PLAINTIFF seeks to represent is composed of DEFENDANTS' employees and former employees who were reclassified as non-exempt but without a corresponding change in job duties. The class is defined as follows:

> All California employees of DEFENDANTS in the Business Unit "INFORMATION TECHNOLOGY" who were informed that they were being changed from exempt to non-exempt status on or about February 2012.

(FAC para. 16)

These alleged illegal policies and practices are class-wide as set forth throughout the FAC, including the following paragraphs.

- The claims of PLAINTIFF pled as class and collective actions are typical of the claims of all members of the class as they arise out of the same course of conduct and are predicated on the same violation(s) of the law. PLAINTIFF, as a representative party, will fairly and adequately protect the interests of the class

6

by vigorously pursuing this suit through her attorneys who are skilled and experienced in handling matters of this type. (FAC para. 19)

- DEFENDANTS have failed to pay PLAINTIFF and other similarly situated employees at one and one-half times the regular rate of pay for all overtime hours as required by the FLSA. (FAC para. 25)

With respect to Plaintiff's Labor Code § 226 and Business and Profession §17200, such claims are generally derivative claims. Thus, if Plaintiff is successful in her class allegations for her claims based on other sections of the Labor code, Plaintiff will also prevail on these claims.  Accordingly, as Plaintiff has alleged sufficient facts in her FAC, Defendants' motion should be denied.

**C.      Plaintiff Has Properly Identified The Class Of Individuals And Pled Sufficient Facts.**

With respect to AT&T's argument that Plaintiff's class allegations should be dismissed or stricken, it is not well taken.  In addition to the fact that Plaintiff has alleged repeatedly that the policies and practices were common to all (see above), Plaintiff has identified the proposed class members in great detail by position names and duties.

All California employees of DEFENDANTS in the Business Unit "INFORMATION TECHNOLOGY" who were informed that they were being changed from exempt to non-exempt status on or about February 2012, but were not paid wages for all hours worked prior to this reclassification.

FAC p.16.

Plaintiff has identified the class with great detail, including the time frame in which the "reclassification" from exempt to non-exempt status took place.  Plaintiff has alleged more than sufficient facts to allow this case to go forward based on the general standard of allowing a plaintiff the opportunity to conduct discovery to establish her class certification allegations.

**D.      Striking of Class Allegations at this Stage – Prior to Discovery – Constitutes Prejudicial And Reversible Error.**

AT&T's suggested course of action is precisely the path Courts are discouraged from following. It is beyond cavil that the overwhelming body of case law allows for discovery before ruling on the propriety of class allegations. *See Baas v. Dollar Tree Stores, Inc.*, 2007 U.S. Dist. LEXIS 65979, *8 (N.D. Cal. 2007) (*citing In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 2007 U.S. Dist. LEXIS 41679, 2007 WL 1557935, * 4 (N.D. Cal. May 29, 2007)). As noted by the *In re Wal-Mart Stores* court, "while there is little authority on this issue within the Ninth Circuit, decisions from courts in other jurisdictions have made clear that 'dismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.'" *In re Wal-Mart Stores*, 505 F. Supp. 2d at 615 (citations omitted). In denying defendants motion to dismiss or alternatively to strike class allegations, the court in *Kazemi v. Payless Shoesource, Inc.*, No. C 09-5142 MHP, 2010 U.S. Dist. LEXIS 27666, at *5 (N.D. Cal. March 16, 2010), "motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for making arguments pertaining to the class allegations."

In *In re Wal-Mart Stores, Inc.*, the district court also relied on Federal Practice and Procedure Civil: "the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery." *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d at 615 (citing 7AA Charles Alan Wright et al., *Federal Practice and Procedure Civil* §1785.3 (3d ed. 2005)). As the Court further stated, "[m]otions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic" and that such motions are "'generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation.'" *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d at 614 (citing *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002); *Rosales v. Citibank*,

*Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike. *Id.*

Indeed, "[a] district court may abuse its discretion by failing to allow discovery clearly tied to issues necessary to determine whether class certification is proper." 5 James Wm. Moore et al., Moore's Federal Practice §23.85[1] (3d ed. 2010).

As discussed above, Plaintiff's FAC, on its face, has alleged sufficient facts to withstand the challenges currently brought forth by Defendants. Case law also supports Plaintiff's right to conduct discovery before any motion such as Defendants' would be considered. *See Thompson v. Merck & Co., Inc., No. 01-1004, 01-1328, 01-3011, 01-6029, 02-1196, 02-4176*, 2004 U.S. Dist. LEXIS 540, at *7-8 (E.D. Pa. Jan. 6, 2004) (defendant's renewed motion to strike granted only because there was sufficient time provided due to the length of time since filing, discovery permitted and plaintiffs failure to file a motion for class certification).

Furthermore, AT&T would suffer no real prejudice in this case going forward into the discovery phase—as the claims alleged have been sufficiently noticed and such claims are clearly policy driven claims that are amenable to focused discovery. AT&T will still be able to raise defenses at the summary judgment and/or summary adjudication stage or in opposing Plaintiff's motion for class certification. However, if AT&T's motion to dismiss or to strike Plaintiff's class allegations were to be granted, Plaintiff would be deprived of fair discovery and a fair attempt to litigate her wage claims for herself and for the class of employees similarly situated to her. For such reasons, AT&T's current motion fails and, therefore, should be denied.

Should the Court find any merit at all in any of the issues raised by AT&T Plaintiff respectfully requests that she be granted leave to file a Second Amended Complaint.

**E.    Bona Fide Dispute Required In Order For Agreements to Be Enforceable.**

California has a **<u>very strong</u>** policy in favor of the *full* payment of wages owed:

The public policy in favor of full and prompt payment of an employee's earned wages is fundamental and well established: 'Delay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to others, and, in many cases may make the wage-earner a charge upon the public.' (*Kerr's Catering Service v. Department of Industrial Relations* (1962) 57 Cal.2d 319, 326)]

The full and prompt payment of wages due an employee is a "fundamental public policy of this state." (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147.)   It serves "society's interests," as well as those of individual employees. (*Ibid.*)   In *Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831, this Court stated: "Public policy has long favored the 'full and prompt payment of wages due an employee.'" (*Id.*, at p. 837, quoting *Kerr's Catering Service v. Dept. of Industrial Relations* (1962) 57 Cal.2d 319, 326.) Wages are not ordinary debts, the Court continued.  Because of the "economic position of the average worker," and "his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay promptly." (*Ibid.*, quoting *In re Trombley* (1948) 31 Cal.2d 801, 809-819, internal quotation marks omitted.) Where an employer attempts to insulate itself from the full payment of wages through written agreement, it has long been settled that a claim will not be discharged when the purported accord and satisfaction violates the state law.[1]

California Labor Code § 206.5 embodies this principle:

> No employer shall require the execution of any release of any claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of such wages has been made. **Any release required or executed in violation of the provisions of this section shall be null and void** as between the employer and the employee and the violation of the provisions of this section shall be a **misdemeanor**. (Emphasis added).

---

1 *Sierra etc. Park Co. v. Universal Elec. etc. Co.,* 197 Cal. 376, 387.

The California Court of Appeal in *Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796 has thrown a wrinkle into California's long-standing public policy for the prompt payment of wages. Specifically, where a "bona fide dispute" exists, private agreements to settle statutory wages claims are enforceable—even if the amount paid to the employee is less that what would be owed under the law. However, only if such disputes are "bona fide" will such releases be upheld.

Accordingly, the enforceability of AT&T's agreement to wipe out Plaintiff's California (non-PAGA) claims,[2] is not a foregone conclusion. There must exist a bona fide dispute. In this particular action, Plaintiff and the class were "reclassified" to non-exempt status without full compensation and without a change in job duties. This would suggest that there was no bona fide dispute; however, that issue is reserved for another day. Although AT&T would welcome this Court finding that a "bona fide dispute" existed, this is not the time nor the place for the Court to make such a ruling.

## F.   AT&T's Request To Strike Class Allegations Improperly Relies On Extrinsic Evidence Which Fails To Meet Requirements For Admissibility.

In requesting that the class allegations be struck, AT&T asks this Court to consider extrinsic evidence in the form of a declaration from AT&T's human resources employee and an alleged severance agreement attached thereto. This is the epitome of improper extrinsic evidence. The Court's ability to consider this type of extrinsic evidence is clear.

> **Defect must appear on face of complaint:** Generally, unless the court converts the <u>Rule 12(b)(6)</u> motion into a summary judgment motion (*see¶ 9:233*), it cannot consider material outside the complaint (e.g., facts presented in briefs, affidavits or discovery materials). [*Arpin v. Santa Clara Valley Transp. Agency* (9th Cir. 2001) 261 F3d 912, 925; *Butler v. Los Angeles County* (CD CA 2008) 617 F.Supp.2d 994, 999 (citing text); *Paulsen v. CNF, Inc.* (ND CA 2005) 391 F.Supp.2d 804, 807 (citing text)]

---

2   California Labor Code Section 2699.3(b)(C)(4) confirms that PAGA requires Court approval before it can be settled. Thus any purported release will not extinguish Plaintiff and the class' PAGA claims.

For purposes of a Rule 12(b)(6) motion, however, the court can "augment" the facts and inferences from the body of the complaint with "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." [*Haley v. City of Boston* (1st Cir. 2011) 657 F3d 39, 46; *Coto Settlement v. Eisenberg* (9th Cir. 2010) 593 F3d 1031, 1038]

None of these exceptions to the rule that the Court is bound by the four corners of the Complaint are applicable to the evidence put forth as the basis for their argument. It would thus be legal error to consider it.

**G.      AT&T Correctly Concedes That FLSA Claim Cannot Be Waived.**

By its terms, the rights to the legal minimum wage and legal overtime compensation conferred by the statute are **unwaivable**. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 US 728, 740 (1981) [right to a minimum wage and overtime pay unwaivable under FLSA]. Because an employee's FLSA claims are nonwaivable, they "are not subject to negotiation or bargaining between employers and employees." *Lynn's Food Stores, Inc. v. United States, etc.*, 679 F.2d 1350, 1352 (1982) *citing Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 709-711 (1945); *see also Schulte Co. v. Gangi*, 328 U.S. 108, 114-115 (1945). FLSA rights are imbued with a public purpose and "cannot be abridged by contract or otherwise waived." *Barrentine, supra,* 450 US at 740. Any waiver of rights under the FLSA "would 'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* As the Supreme Court stated, "The principal congressional purpose in enacting the [FLSA] was **to protect all covered workers**." *Id.* at 739 (Emphasis added).

Thus, AT&T is correct that Plaintiff's FLSA claims cannot be waived; however, AT&T is incorrect that it can ban Plaintiff from proceeding on a classwide basis to adjudicate the same wage violations on behalf of those similarly situated.

**H.** **NLRB Confirms A Contract That Eliminates The Ability to Vindicate Statutory Rights Is Illegal And Unenforceable.**

Generally, the issue of the enforcement of class action ban arises in the context of an arbitration agreement with a class action ban and the Federal Arbitration Act ("FAA"). Arbitration agreements are heavily favored under the law -- well beyond basic private agreements -- yet even in the context of an arbitration agreement, class action bans are void to the extent they seek to eliminate statutory rights. Here we have no arbitration agreement so the great deference awarded arbitration agreements does not apply. In other words, even in the most favorable situation to AT&T (enforcement of an arbitration agreement) their efforts to enforce a ban on class action would fail.

The Supreme Court has articulated that whenever private contracts conflict with the functions of the National Labor Relations Act, they obviously must yield or the Act would be reduced to a futility. *J.I. Case Co. v. NLRB*, (1944) 321 U.S. 332 at 337.)

AT&T's arguments are hinged on an *opposite* construction of the law, i.e., that the NLRA and the opinion of the NLRB are <u>inferior</u> to the parties private agreement. The Supreme Court and the NLRB have held to be of premier importance, preservation of the substantive rights protected by the NLRA and ensuring that substantive rights be undisturbed.

> The Supreme Court has repeatedly emphasized, however, that the FAA protects the right of parties to agree to resolve statutory claims in an arbitral forum so long as 'a party does not forgo the substantive rights afforded by the statute. Thus, arbitration may substitute for a judicial forum only so long as the litigant can effectively vindicate his or her statutory rights through arbitration. (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 628, 637.)

Section 7 of the NLRA vests employees with a substantive right to engage in specified forms of associational activity. It provides in relevant part that employees shall have the right "to engage in … concerted activities for the purpose of collective bargaining or other mutual aid or protection …." <u>29 U.S.C. §157</u>. It is well settled that "mutual aid or protection" includes employees' efforts to "improve terms and conditions of employment or

otherwise improve their lot as employees through channels outside the immediate employee-employer relationship.". Section 7 provides that employees shall have the right to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection. (29 U.S.C. § 157.) The NLRB found that "employees who join together to bring employment-related claims on a class-wide or collective basis in court or before an arbitrator are exercising rights protected by Section 7 of the NLRA. When a term violates federal law, it "may not serve as the foundation of any action, either in law or in equity," rendering it unenforceable in state court. (*Kashani v. Tsann Kuen China Enterprise Co.* (2004) 118 Cal.App.4th 531, 541.) Under Supreme Court authority, an agreement containing a term that violates the NLRA cannot be enforced. (See *Kaiser Steel Corp. v. Mullins* (1982) 455 U.S. 72 at 86 [holding that courts cannot enforce a contractual term that would constitute an unfair labor practice under NLRA if given effect].)

The Board has long held, with uniform judicial approval, that the NLRA protects employees' ability to join together to pursue workplace grievances, including through litigation. Not long after the Act's passage, the Board held that the filing of a Fair Labor Standards Act suit by three employees was protected concerted activity, see *Spandsco Oil & Royalty Co.,* 42 NLRB 942, 948-949 (1942), as was an employee's circulation of a petition among coworkers, designating him as their agent to seek back wages under the FLSA, see *Salt River Valley Water Users Ass'n*, 99 NLRB 849, 853-854 (1952), enfd. 206 F.2d 325 (9th Cir. 1953). In the decades that followed, the Board has consistently held that concerted legal action addressing wages, hours or working conditions is protected by Section 7. Collective pursuit of a workplace grievance in arbitration is equally protected by the NLRA. When the grievance is pursued under a collectively-bargained grievance-arbitration procedure, the Supreme Court has observed, "No one doubts that the processing of a grievance in such a manner is concerted activity within the meaning of § 7." *NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 836 (1984). And the same is true when the grievance is pursued under a unilaterally created grievance/arbitration procedure so long as its pursuit is concerted.

It is equally well settled that the advancement of a collective grievance is protected activity, even if the grievance in question is not formally stated or does not take place under

the auspices of a contractual grievance procedure. *N.L.R.B. v. Washington Aluminum Company, Incorporated*, 370 U.S. 9 (1962); *N.L.R.B. v. Walls Manufacturing Company*, 321 F.2d 753 (C.A.D.C., 1963); *N.L.R.B. v. Hoover Design Corporation*, 402 F.2d 987 (C.A. 6, 1968).

Ultimately, an agreement interfering with section 7 rights is unenforceable as an illegal contract. Illegal contracts are unenforceable.

I.      **Plaintiffs Have A Legal Right To Amend To Add Private Attorney General Claims ("PAGA") That Must Proceed As Collective/Representative Action**

The California Private Attorney General Act (PAGA) codified at California Labor Code Sections 2698-99 et seq. provides at California Labor Code Section 26.99.3:

> (1) The aggrieved employee or representative shall give written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation.
> (2)(A) The agency shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation within 30 calendar days of the postmark date of the notice received pursuant to paragraph (1). Upon receipt of that notice or if no notice is provided within 33 calendar days of the postmark date of the notice given pursuant to paragraph (1), the aggrieved employee may commence a civil action pursuant to Section 2699…
>
> (C) Notwithstanding any other provision of law, a plaintiff may as a matter of right amend an existing complaint to add a cause of action arising under this part at any time within 60 days of the time periods specified in this part.

Cal. Lab. Code § 2699.3 (West).

On December 19, 2012, Plaintiff complied with the requirements under California Labor Code Section 2699.3 and sent written correspondence to California's Labor Workforce Development Agency (LWDA), commencing exhaustion of her administrative remedies. See Exhibit 1 to the Declaration of John Glugoski. The time in which the LWDA

must act has passed and the LWDA will not take action. Thus, Plaintiff as a matter of right may amend her Complaint to add PAGA claims. (Declaration of John Glugoski).

Plaintiff has attempted to meet and confer on the matter but has not received a response from AT&T; however, Plaintiff will be bringing a motion for leave to amend to add PAGA claims to Complaint prior to the hearing date of this motion to strike.

To the extent, AT&T asserts that there exists an agreement which has the effect of broadly shielding AT&T from any liability on a representative basis under not just the Private Attorney General Act ("PAGA") but in any aspect such an assertion is in error. AT&T's anticipated claim of blanket immunity as to Plaintiff and other similarly situated persons for violations of PAGA is an affront to the statutory scheme. The right to enforce a PAGA claim is held by the State of California. Based on the overwhelming amount of employee claims for employers' violations, the legislature enacted PAGA. By enacting PAGA the Legislature authorized "aggrieved employees" to prosecute claims that were previously subject to prosecution only by the State Attorney General.

**1.** *Reyes* **Confirms That PAGA Can Only Proceed As A Representative Action And Thus A Statutory Right Will Be Eliminated By Enforcing A Class Action Ban.**

Another feature of PAGA is that an aggrieved employee may only prosecute an action under PAGA if s/he brings the action on a representative basis. In *Brown*, the court emphasized that PAGA was enacted as a "statutory representative action" designed to enforce the Labor Code through private attorneys general. (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489.) Subsequently, the *Reyes* court bolstered this conclusion, confirming that PAGA is inherently representative and cannot be brought as an individual claim in any forum. (*Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119.)

By asserting that the existence of an agreement prohibiting representative or class claims should trump PAGA enforcement, AT&T seeks to eviscerate the prosecution of Labor Code violations under PAGA.

### 2. Preemption Does Not Apply To Representative Private Attorney General Actions

The PAGA was created in 2004 to enforce Labor Code violations and remedy the understaffing of California's labor law enforcement agencies by granting employees the authority to bring civil actions against their employers for Labor Code violations. (*Franco v. Athens Disposal Co., Inc.*, (2009) 171 Cal.App.4th 1277, 1300.) PAGA was found to be necessary in light of legislative findings that the State of California lacked the resources to prosecute these statutory offenses due to the confluence of declining budget resources and the volume and frequency of violations. After PAGA, aggrieved employees were deputized to undertake the role of a private attorney general to collect penalties from -- and enforce Labor Code violations committed by -- employers. (*Brown v. Ralphs*, (2011) 197 Cal.App.4th 489 at 499.)

In *Brown v. Ralphs Grocery Co.*, Division Five of the Second Appellate District Court held that the *Concepcion* holding does not apply to representative actions under the PAGA and therefore a waiver of PAGA representative actions is unenforceable under California law. (*Brown* (2011) 197 Cal.App.4th 489, 494.) In holding that the FAA does not preempt representative claims under the PAGA, the *Brown* court articulated that if the FAA was to preempt state law as to render unenforceable the PAGA representative action waivers, the benefits of private attorney general actions to enforce state labor laws would, in large part, be nullified. (*Brown* (2011) 197 Cal.App.4th 489, 502.)

In *Gentry*, the court articulated that in certain circumstances a class arbitration waiver could impermissibly interfere with the employees' ability to vindicate their statutory rights. (*Gentry v. Superior Court*, (2010) 42 Cal.App.4th 443.) Additionally, the Second Appellate District Court of California has distinguished consumer class actions from representative PAGA actions based on the fact that representative actions are designed to protect the public whereas consumer class actions are for the exclusive benefit of private parties. (*Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1300.)

> "Such an action is fundamentally a law enforcement action designed to protect the public and penalize the employer for past illegal conduct.

Restitution is not the primary object of a PAGA action, as it is in most class actions." (*Id.*)

The *Brown* court further distinguished *AT&T* stating:

*AT&T* does not purport to deal with the FAA's possible preemption of contractual efforts to eliminate representative private attorney general actions to enforce the Labor Code... *AT&T* does not provide that a public right, such as that created under the PAGA, can be waived if such a waiver is contrary to state law. In short, representative actions under the PAGA do not conflict with the purposes of the FAA. If the FAA preempted state law as to the unenforceability of the PAGA representative action waivers, the benefits of private attorney general actions to enforce state labor laws would, in large part, be nullified...*AT&T* did not specifically address whether California state law applicable to waivers of statutory representative actions — which actions are a means to enforce state labor laws for the benefit of the public — was preempted by the FAA... But United States Supreme Court authority does not address a statute such as the PAGA, which is a mechanism by which the state itself can enforce state labor laws, for the employee suing under the PAGA "does so as the proxy or agent of the state's labor law enforcement agencies. (See, *Brown v. Ralph's Grocery Co.,* (2011) 197 Cal.App.4th 489, 500.)

The decisions in *Franco* and *Brown* are entirely <u>consistent</u> with United States Supreme Court authority. *Franco* acknowledged that a PAGA cause of action flows from a delegation of enforcement powers.

The Legislature has made clear that an action under the PAGA is in the nature of an enforcement action, with the aggrieved employee acting as a private attorney general to collect penalties from employers who violate labor laws. Such an action is fundamentally a law enforcement action designed to protect the public and penalize the employer for past illegal conduct. Restitution is not the primary object of a PAGA action, as it is in most class actions. Before the PAGA was enacted, an employee could recover damages, reinstatement, and other appropriate relief but could not collect civil penalties. The Labor and Workforce Development Agency (LWDA) collected them. The PAGA changed that. (*Franco,* at 1300.)

This is confirmation that PAGA created a substantive right to recover, not merely a procedural mechanism for enforcing already existing rights. It did so expressly by

providing a cause of action to proceed as private attorney general. "Thus, under the Act, employees supplement the LWDA as Labor Code enforcers by 'deputizing' employees in the role of private attorney generals." (*Franco* at 1302.)

No authority cited to by AT&T stands for the proposition "that a public right, such as that created under the PAGA, can be waived if such waiver is contrary to state law." (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 500.) The cases upon which AT&T rely do not involve a PAGA representative claim.

In *EEOC v. Waffle House*, the Supreme Court was presented with an analogous situation to this (534 U.S. 279.) The employer's argument was rejected by the Court. The Supreme Court emphasized that an enforcement action seeks "to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief. To hold otherwise would undermine the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's "statutory function." (*Waffle House*, 534 U.S. at 295.)

This rationale applies equally to a PAGA enforcement action where California created "a mechanism by which the state itself can enforce state labor laws, for the employee suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." (*Brown,* 197 Cal.App.4th at 500.)

The right of an aggrieved employee, such as Plaintiff Birdsong, to proceed under PAGA is derivative of the state's right to enforce its labor protections. "Thus, the PAGA Act empowers or deputizes an aggrieved employee to sue for civil penalties." (*Dunlap v. Superior Court,* (2006) 142 Cal.App.4th 330, 337.) The *Dunlap* court relied upon legislative history, which included an analysis concluding that *"This bill is intended to augment the enforcement abilities of the Labor Commissioner by creating an alternative 'private attorney general' system for labor law enforcement." ( Id.,* italics added.)

In 2010 the California Supreme Court recognized the proxy nature of a PAGA action when rejecting the argument that PAGA claims had to be brought as class actions.

> An employee plaintiff suing, as here, under the Labor Code Private Attorneys General Act of 2004, does so as the proxy or agent of the state's labor law enforcement agencies. The act's declared purpose is to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves. *(Arias v. Superior Court,* (2009) 46 Cal.4th 969, 986.)

The Court noted that this aspect of the cause of action meant that an action under PAGA was *primarily* for the benefit of the general public, and not the private litigant.

> The act authorizes a representative action only for the purpose of seeking statutory penalties for Labor Code violations (Cal. Labor Code, § 2699(a), (g).), and an action to recover civil penalties "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties *(People v. Pacific Land Research Co.,* (1977) 20 Cal.3d 10, 17.)

Plaintiff will amend to bring a representative action for violations suffered directly by herself and others similarly situated. The right to prosecute these violations is held by the State of California and this is a right that cannot be waived. By deputizing aggrieved employees through the PAGA, California allows an avenue in which to ensure violations are addressed. This is premised on the strong public policy upholding labor standards and promoting the public interest.

### 3. Private Agreements Cannot Be Used To Eviscerate Statutory Rights That Cannot Be Waived

AT&T's request for prohibition of all representative or class claims operates as a limitation of a statutory remedy in direct conflict with *Armendariz's* mandate "that an arbitration agreement may not limit statutorily imposed penalties." (24 Cal.4th at 103.) Under PAGA, "an aggrieved employee may recover civil penalties… filed on behalf of himself or herself and other current and former employees against whom one or more of the alleged violations was committed." (Cal. Labor Code §2699(g)(1).) The civil penalties that a PAGA litigant recovers are measured by the violations committed against all of the other aggrieved employees. By enforcing a clause that limits any PAGA recovery to which the

aggrieved employee, and ultimately the state, is entitled by statute, the Appellant seeks to cap a statutory remedy in violation of *Armendariz*.

The Supreme Court emphasized this position in *Mitsubishi*, that it would "condemn… as against public policy an arbitration agreement that operated as a prospective waiver of a party's right to pursue statutory remedies." (473 U.S. at 637.)

Here, Plaintiff Birdsong would *forfeit* statutory rights in an individual arbitration proceeding because PAGA claims can only be prosecuted as representative/class actions.

Similarly, The California Supreme Court in *Gentry v. Superior Court* 42 Cal.4th 443 (2010) was explicitly founded on the Supreme Court's vindication of rights doctrine adopted by the court in *Armendariz* and *Little v. Auto Stiegler,* which relied on *Gilmer v. Interstate* (cited to by AT&T p. 23-24*)* in holding that, when a party submits claims "to their resolution in an arbitral, rather than a judicial, forum, arbitration cannot be misused to accomplish a de facto waiver of these rights." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1079; *Gentry*, 42 Cal.4th at 456-458.)

### 4. The State of California Was Not A Party In The Agreement And Cannot Be Forced To Waive Its Enforcement Rights

In a PAGA action, "the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies." (*Arias v. Super. Ct.,* (2009) 46 Cal.4th 969, 986.) A PAGA litigant acts as "the proxy or agent of the state's labor law enforcement agencies." (*Id.*) The PAGA action thus "functions as a substitute for an action brought by the government itself. (*Id.*) In other words, the real party of interest, the one that recovers the lion's share of penalties on a judgment, is the State of California.

By presuming that a waiver obtained by an aggrieved employee can compel the state to forfeit its rights, AT&T asks this Court to disregard *Waffle House*, which held that an arbitration agreement cannot bind a governmental enforcement agency situated as the State of California is here. (*EEOC v. Waffle House* (2002) 534 U.S. 279, 294.) As in *Waffle House*, the decision below "turns what is effectively a forum selection clause into a waiver of a nonparty's statutory remedies." (*Id.* at 295.) In fact, "the pro-arbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to

do so." (*Id.* at 294.)  Here, the State of California has not relinquished – and cannot be forced to relinquish -- its statutory authority to prosecute this action, either on its own or by proxy, based on private agreement to which it was not a party.  Because to do so would directly contravene the Supreme Court's holding in *Waffle House.*

### 5. There Is A Strong Presumption Against Implied Preemption Of A State's Exercise of Its Police Powers

"States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State … minimum wage and other laws [are] examples." (*Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1198.)  PAGA is one such statute "validly adopted under the police power." (*Home Depot U.S.A., Inc. v. Super. Ct.* (2010) 191 Cal.App.4th 210, 225.)

For Statutes that implicate the state's police powers, courts start "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (*Wyeth v. Levine* (2009) 555 U.S. 555, 565.)  Even in areas traditionally regulated by *the* federal government, the Court will adopt a strong presumption against implied preemption.  In the same terms that *Concepcion* was decided, the Court held that an Arizona statute that punishes employers for hiring illegal immigrants was not preempted by federal immigration law due to Arizona's interest in regulating employment. (*Chamber of Commerce of the United States v. Whitting* (2011) 131 S.Ct. 1968, 1973-74.)

There is no indication that the 1925 Congress sought to displace state statutes designed to enforce the state's labor laws, such as PAGA.  As noted above, PAGA was promulgated to incentivize private litigants to more effectively enforce labor laws.  Without the representative action mechanism, California's objective in creating this right of action to enforce labor laws "would be nullified." (*Brown*, 197 Cal.App.4th at 502.)

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny AT&T's motion in its entirety, especially in light of Plaintiff's motion to amend to add

PAGA claims, which will be on file prior to hearing on this motion. If the Court is inclined to grant AT&T's motion in any respect on the grounds that the Court believes the deficiency cannot be remedied by the PAGA amendment, Plaintiff respectfully requests leave to amend to address those issues.

Dated: January 31, 2013

Respectfully Submitted,
RIGHETTI GLUGOSKI, P.C.

By: /s/ John Glugoski

_____
John Glugoski

**PROOF OF SERVICE**

STATE OF CALIFORNIA

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the action. My business address is Righetti Glugoski, P.C., 456 Montgomery Street, Suite 1400, San Francisco, California, 94104.

On Thursday, January 31, 2013 I served the foregoing document described as:

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

on the interested parties by administering a true copy either by facsimile or in sealed envelopes addressed as follows:

**Julie A. Totten**
**Sara E. Dionne**
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
400 Capital Mall, Suite 3000
Sacramento, CA 95814

**George A. Stohner**
**John S. Battenfeld**
**MORGAN LEWIS & BOCKIUS, LLP**
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071

**Rebecca Eisen**
**Therese Mak**
**MORGAN LEWIS & BOCKIUS, LLP**
One Market, Spear Street Tower
San Francisco, CA 94105

///

**(X)   ECF FILE AND SERVE:**

By delivering such documents to ECF File and Serve, addressed to the registered ECF accounts for whom it is to be served.


I declare under penalty of perjury under the laws of the State of California that the above is true and correct and was executed on Thursday, January 31, 2013, at San Francisco, California.


Sarah Minkus